FILED

2014 Dec-30  PM 01:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **Case No.** |
| | ) |
| **JEFFREY R. GREEN** | ) |

## INFORMATION

The United States Attorney charges that:

At all times material to this Information:

### Introduction

1.     Serra Nissan, located at 1500 Center Point Parkway, Birmingham, Alabama 35215, in the Northern District of Alabama, sold new and used cars and often assisted customers with obtaining car loans.

2.     As part of the car loan funding process, Serra Nissan collected personal information from prospective customers, including, but not limited to, customers' social security numbers, credit scores, monthly income, pay stubs, current home addresses, personal references, and other information required by financial institutions in order to fund car loans. Some of that information was gathered when the customer came in and spoke to a salesman, while more detailed information was collected at the final signing or financing, conducted by a finance

manager. The entire process was overseen by the General Sales Manager ("GSM") or a sales manager.

3.     When a customer initially provided information to a salesman, the salesman would enter that information into a software program used by Serra Nissan to store and track information on its customers.  If a customer needed to obtain a car loan, the GSM or a sales manager would enter the customer's information into a different online database that submitted their information to multiple financial institutions simultaneously. The financial institutions could then respond with what financing, if any, they were willing to offer the customer. If a financial institution approved the application, the customer would be sent to the financing department to finalize the transaction. There, they would meet with a finance manager who would provide them with their closing paperwork, including the paperwork for the sale itself and the car loan financing.

4.     When a car loan was financed, the funds from the financial institutions were transmitted by wire from the lending institution directly to Serra Nissan. With the profit acquired from the auto loan, the employees involved in the deal (salesperson, finance manager, sales manager and GSM), and the dealership, were paid their commission.

5.     At all times relevant, defendant **JEFFREY R. GREEN** was a Finance Manager at Serra Nissan.

## COUNT ONE
### Conspiracy
### 18 U.S.C. § 371

### THE CONSPIRACY

6.     The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 5 of this Information as though fully set out herein.

7.     From in or about September 2011 and continuing until in or about September 2013, the exact dates being unknown, in or around Jefferson County, within the Northern District of Alabama, and elsewhere, the defendant

**JEFFREY R. GREEN,**

did knowingly and willfully conspire, combine, and agree with other persons, known and unknown to the United States Attorney, to commit offenses against the United States, that is:

(A) to devise and intend to devise a scheme and artifice to defraud a financial institution, and to obtain any of the moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344; and

(B) to devise and intend to devise a scheme and artifice to defraud financial institutions, Nissan North America, and Serra Nissan customers, to obtain money and property belonging to others by

3

means of materially false and fraudulent pretenses, representations, and promises by use of interstate wire communications and transmissions, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS OF THE CONSPIRACY

8.  It was a part of the conspiracy that defendant **JEFFREY R. GREEN,** and others both known and unknown to the United States Attorney, conspired to increase the number of cars sold by fraudulent means; to inflate the prices of vehicles; to falsify vehicle purchasers; and to misrepresent vehicle values, in order to increase profits to themselves.

9.  It was a further part of the conspiracy that defendant **JEFFREY R. GREEN,** and others both known and unknown to the United States Attorney, would falsify information or documents for customers that did not qualify for car loans, to ensure their car loans were funded.

10.  It was a further part of the conspiracy that defendant **JEFFREY R. GREEN,** and others both known and unknown to the United States Attorney, would falsely and fraudulently inflate the income information of prospective car purchasers submitted to financial institutions so customers who otherwise would not qualify for car loan funding, would be able to obtain a loan.

11.  It was a further part of the conspiracy that defendant **JEFFREY R. GREEN,** and others both known and unknown to the United States Attorney,

would create false documents or materially alter existing documents, including, but not limited to bank statements and pay stubs, to be submitted to financial institutions to show that customers were earning more than their actual income.

12.     It was a further part of the conspiracy that defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, would submit fraudulent utility bills and bank statements to financial institutions to misrepresent proof of the customer's residency during the car-loan funding process.

13.     It was a further part of the conspiracy that defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, would falsely and fraudulently state on a credit application that two individuals lived together- when, in fact, they did not- so financial institutions would believe there was a combined income greater than what actually existed for the individual customer.

14.     It was a further part of the conspiracy that defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, would submit falsified information to financial institutions regarding what features were actually on the vehicle (*i.e.*, power seats, sunroofs, upgraded sound systems, running boards, towing packages, *etc.*), in order to artificially inflate the vehicle's

retail value, so that the financial institution would increase the amount funded for the car.

15.     It was a further part of the conspiracy that defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, were financially incentivized to increase the loan amount to increase commissions for certain employees.

16.     It was a further part of the conspiracy that defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, would also defraud financial institutions in instances where the financial institution required the customer to pay a certain amount of cash at the time of signing, by creating a false document that made it appear the customer paid a down payment, when in fact, it was paid by the dealership.

17.     Defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, would coach customers that, if the bank called and asked about the down payment, the customers were to tell the financial institution that the customer, not the dealership, had paid the down payment.

18.     Defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, would also defraud financial institutions by making it appear that an individual who qualified for the loan purchased the

vehicle when, in truth and fact, the actual purchaser was a different, non-qualifying individual.

19.     Defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, defrauded financial institutions by increasing the value of a customer's vehicle trade-in to increase the profit on a deal, and by fraudulently reporting that a customer's vehicle was traded in when, in fact, it was not.

20.     Defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, defrauded customers and financial institutions by quoting a customer an inflated monthly payment on a vehicle the customer was interested in purchasing, so that a finance manager could add a warranty and gap insurance at the end of the transaction, without the customer realizing they were paying for them.

21.     Defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, defrauded Nissan North America by falsely reporting that vehicles were sold at Serra Nissan, when, in fact, they were sold at a different dealership, in order to obtain incentive payments to which Serra Nissan was not entitled.

## OVERT ACTS

22.     In furtherance of the conspiracy and to achieve the objects thereof, defendant **JEFFREY R. GREEN**, and others both known and unknown to the United States Attorney, committed and caused to be committed the following overt acts, among others, in the Northern District of Alabama and elsewhere:

23.     In February 2012, **JEFFREY R. GREEN** began preparing false documents to support customer loan applications at Serra Nissan.

24.     At the request of the GSM, **JEFFREY R. GREEN** would create fake bank statements, power bills, personal references, and pay stubs, knowing they would be submitted to financial institutions.

25.     **JEFFREY R. GREEN** had a template for a bank statement on his computer at Serra Nissan. For certain car sales, **JEFFREY R. GREEN** would change the information on the template to reflect the new information needed to get the deal funded.

26.     **JEFFREY R. GREEN**, and others known and unknown to the United States Attorney, were instructed by management, as a policy and practice at the dealership, to shred original credit applications filled out by certain customers so there was no record of the customer's actual income.

27.     On or about October 18, 2012, **JEFFREY R. GREEN**, at the request and direction of M.W. and G.S., created two false bank statements and submitted them to Capital One Auto Finance, on behalf of customers J.T. and W.K.

All in violation of Title 18, United States Code, Section 371.

### COUNT TWO
### Failure to File Individual Tax Return
### 26 U.S.C. § 7203

28.     The United States Attorney repeats and realleges the allegations contained in paragraphs 1 through 5 of this Information as though fully set out herein.

29.     During the calendar year 2012, defendant **JEFFREY R. GREEN**, who was a resident of Birmingham, Alabama, had and received gross income of $135,169.00. By reason of such gross income, he was required by law, following the close of the calendar year 2012 and on or before April 15, 2013, to make an income tax return to the person assigned to receive U.S. Individual Income Tax Returns at the local office of the Internal Revenue Service at Atlanta, Georgia, the Internal Revenue Service Center, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, he did willfully fail, on or about April

15, 2013, in the Northern District of Alabama and elsewhere, to make an income tax return.

All in violation of Title 26, United States Code, Section 7203.

## NOTICE OF FORFEITURE
### [18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

30.     The allegations of Count One of this Information are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States pursuant to the provision of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

31.     Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendant is hereby notified that upon conviction of Count One of this Information the defendant **JEFFREY R. GREEN** shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to said violations.

32.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any property of said Defendant up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).


JOYCE WHITE VANCE
United States Attorney


AMANDA S. WICK
Assistant United States Attorney

ROBIN B. MARK
Assistant United States Attorney